IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| DAN CAPLINGER | § |
| | § |
| VS. | §   CA No. _____ |
| | § |
| BOSTON MUTUAL LIFE | § |
| INSURANCE COMPANY and | § |
| EMPLOYER FLEXIBLE HR, LLC | § |
| HEALTH AND WELFARE PLAN | § |

## PLAINTIFF'S ORIGINAL COMPLAINT

DAN CAPLINGER, Plaintiff, files this Original Complaint asserting causes of action in law and equity for relief against Boston Mutual Life Insurance Company and Employer Flexible HR, LLC Health and Welfare Plan, Defendants.

## I.
## PARTIES

1. Plaintiff, Dan Caplinger is a resident citizen of Houston, Texas.

2. Defendant, Boston Mutual Life Insurance Company, ("Boston Mutual"), is a domestic or foreign insurance company licensed to do business and doing business in the state of Texas, and can be served with process by serving its registered agent, CT Corporation, 1999 Bryan St., Suite 900, Dallas, TX 75201, or wherever it may be found. Disability Reinsurance Management Services, Inc. ("Disability RMS") is the claims administrator for Boston Mutual and acted on behalf of Boston Mutual in all matters alleged herein regarding the administration, granting, payment, termination, and appeal denial of Caplinger's

1

claim for benefits. All communications between Caplinger and Boston Mutual and actions taken by Boston Mutual, as alleged herein, were by Disability RMS.

3. Defendant, Employer Flexible HR, LLC Health and Welfare Plan ("Plan"), is a domestic or foreign company licensed to do business and doing business in the state of Texas, and can be served with process by serving its registered agent, Employer Flexible HR, LLC, 7192 Sam Houston Parkway, Suite 200, Houston, TX 77064, or wherever it may be found.

## II.
## JURISDICTION AND VENUE

4. This action against Boston Mutual and the Plan arises under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §1001 *et seq.* This Court has jurisdiction over this action pursuant to 29 U.S.C. §1132(e)(1).

5. Venue is proper in this District and Division pursuant to 29 U.S.C. §1132(e)(2) because Defendants maintain business activity in and are in this district.

6. Pursuant to 29 U.S.C. §1132(h), this Complaint has been served upon the Secretary of Labor, Pension and Welfare Benefits Administration, at 200 Constitution Avenue N.W., Washington, D.C. 20210 and the Secretary of the Treasury at 111 Constitution Avenue N.W., Washington, D.C. 20024, by certified mail return receipt requested.

## III.
## STATEMENT OF FACTS

7. Mr. Caplinger was hired by Tristar/Employer Flexible HR in September 2012 as a Sales Manager, where he supervised 9 different people. He spoke face to face with employees, customers, suppliers, and coworkers. The job was demanding, as he

was required to keep up with industry and training materials, update calendars, and generate reports. He worked 45-50 hours per week at various locations and spent additional hours on administrative tasks.

8. Caplinger enrolled in Tristar/Employer Flexible HR's employee welfare benefit Plan that included benefits for long term disability (LTD). The Plan was part of Tristar/Employer Flexible HR's Group Insurance Policy issued by Boston Mutual. It provided income protection if an employee was disabled as a result of injury or sickness. Mr. Caplinger was an eligible employee.

9. Tristar/Employer Flexible HR was the Plan Sponsor and Plan Administrator.

10. Boston Mutual was the Insurer of the Plan.

11. Boston Mutual contracted with Disability RMS to act as Claims Administrator for the Plan. Any LTD benefits would be paid by Boston Mutual.

12. In March 2013, Mr. Caplinger began to suffer from jaw pain. He was eventually diagnosed with cancer and underwent surgery to remove adenoid systemic carcinoma[1] from his neck a month later.

13. For 6 months, he was unable to work. He could not drive to the office or hold meetings with customers and suppliers. Understanding his limitations, Tristar/Employer Flexible HR limited his work to administrative tasks. The CEO/President took on the role of Sales Manager.

14. In 2014, he could only work 2 days a week at the office, and his fatigue prevented him from staying after 2 p.m. He was limited to administrative tasks and could not hold face to face meetings with customers. He remained dependent on

---

[1] Adenoid cystic carcinoma is a rare malignant cancer that arises most often in the salivary glands of the head and neck. Unlike most carcinomas, most patients with ACC survive for 5 years, only to have tumors recur and progress.

painkillers for his ongoing jaw pain. Although he maintained this modified work schedule for more than a year, Mr. Caplinger could not hold in-person meetings with customers and depended on painkillers to manage his pain.

15. In June 2014, Dr. Jeffrey Sweeney noted that Mr. Caplinger suffered from shortness of breath and severe fatigue from exercise. The symptoms started after radiation therapy.

16. In early 2015, Caplinger tried to increase his workload to 3 full days a week, but the chronic pain, fatigue, and cognitive problems were overwhelming.

17. Mr. Caplinger stopped working in October 2015 and applied for LTD benefits. Boston Mutual initially denied his claim, arguing that he had already worked through pain and fatigue for 2 years. Mr. Caplinger appealed the denial in October 2016. Boston Mutual reversed its denial and approved his LTD benefits.

18. Starting in 2016, Mr. Caplinger's physicians diagnosed him with nerve damage, including neuropathy in his feet and carpal tunnel syndrome in his hands. These conditions affect his ability to stand, walk, and work with his hands.

19. On November 11, 2016, Dr. Lawrence Broda, an assistant medical director at Disability RMS, reviewed some of Mr. Caplinger's medical records. Dr. Broda noted that Mr. Caplinger "consistently reports jaw pain and fatigue at every visiting to his treating physicians".

20. In April 2017, Mr. Caplinger underwent a Neurocognitive Evaluation with Dr. Christine Randall. Dr. Randall noted that it was difficult for him to speak due to pain. She diagnosed with him with chronic pain, sleep disorder due to pain, and reduced concentration.

21. In June 2017, Dr. Michael Kupferman noted that Mr. Caplinger continued to suffer from right neck pain and persistent fatigue.

22. On July 13, 2017, Boston Mutual advised Mr. Caplinger that it would review his LTD claim to determine if he qualified for disability under the "any occupation" definition of the Policy.

23. On October 10, 2017, Dr. Broda advised that he needed additional information in order to review Mr. Caplinger's claim. He asked for "observational data", requesting that Disability RMS conduct surveillance of Mr. Caplinger.

24. Dr. Broda is a medical director with Disability RMS. His job description does not involve requesting surveillance on insureds like Mr. Caplinger.

25. On November 17, 2017, Dr. Randall Wright noted that Mr. Caplinger had tingling in his hands and arms. Working on a computer made the tingling worse.

26. On January 12, 2018, Mr. Caplinger underwent a Neurocognitive Evaluation. It was determined that his cognitive deficits were related to pain, medications, fatigue, and sleep disturbance.

27. Boston Mutual terminated Mr. Caplinger's claim on January 30, 2018. In doing so, it relied on medical record reviews by Disability RMS medical director Lawrence Broda and a Malcolm Spica. Both "reviews" were based on small portions of his medical records. It also relied on an occupational review by Disability RMS employee Teresa Marques.

28. In February 2018, a Social Security Administration Administrative Law Judge approved Mr. Caplinger's Social Security Disability claim. The disability was retroactive to October 2015. Specifically, Judge David Gutierrez found that Mr.

   Caplinger suffered from right adenoid cystic carcinoma post-surgery, chronic fatigue disorder, chronic pain disorder, neuropathy, and nerve root irritation in lumbar and cervical spine. Judge Gutierrez concluded that his symptoms were reasonably consistent with the medical evidence, and that he could not work an 8 hour day, 40 hour work week in any capacity.

29. In May 2018, Dr. Timothy Burrows noted that Mr. Caplinger suffered from frequent headaches, jaw pain, hand numbness, grip problems, numbness in his feet, and burning sensations in his thighs and hips. He also noted the recent diagnoses of cervical radiculopathy and lumbago with sciatica.

30. Mr. Caplinger appealed Boston Mutual's termination of his LTD claim in July 2018. Along with his appeal, he provided 32 exhibits totaling almost 1,400 pages that supported his claim.

31. In January and June 2018, Mr. Caplinger underwent Electromyography ("EMG") testing. In reviewing the results, Dr. Burrows concluded that Mr. Caplinger suffered from chronic inflammatory demyelinating polyneuritis ("CIDP")[2].

32. In September 2018, Boston Mutual retained a Stuart Russell to review some of Mr. Caplinger's medical records. Dr. Russell concluded that the EMG tests did not support a diagnosis of CIDP. He concluded that Mr. Caplinger could work full time in a sedentary occupation.

33. Boston Mutual denied Mr. Caplinger's appeal on September 5, 2018. In doing so, it relied on two medical record reviewers. One of those reviewers was Dr. Stuart Russell. Dr. Russell is not licensed to practice medicine in Texas. He claims that

---

[2] CIDP is a nerve disease that causes weakness, numbness, and pain. It occurs when nerve roots swell and destroy the myelin sheaths, impairing limb function. CIDP is twice as common in men.

he is licensed in Maine, but he is not found in the Maine Board of Licensure in Medicine's database.

34. Dr. Russell's bias and credibility have been called into question by several courts. In *Clark v. CUNA Mutual*, the plaintiff presented evidence of his symptoms, which included chronic back pain, numbness and tingling in his leg, and limited range of motion[3]. Just as here, Disability RMS was the Claim Administrator and paid Dr. Russell to review some of the plaintiff's medical records. Just as here, Dr. Russell concluded that the plaintiff could do full time sedentary work. Just as here, Dr. Russell contended that the plaintiff's treating physicians did not properly support their claims of restrictions and limitations. The Court found that Dr. Russell ignored the subjective nature of the plaintiff's pain complaints and that he did not even acknowledge the plaintiff's supplemental reports. His opinions were appropriately discounted.

35. In *Wagner v. American United,* Disability RMS was again the Claims Administrator[4]. Every physician who saw the plaintiff agreed that he could not return to work. Dr. Russell reviewed some of the medical records in the claim. He concluded that the plaintiff was just lying about his condition and could return to work. The Court discredited Dr. Russell's opinions because opinions based on paper reviews are entitled to little weight when the insurer can order an in-person examination. *Judge v. Metro. Life Ins. Co.,* 710 F.3d 651 (6th Cir. 2003).

36. In this claim, Dr. Russell believes that Mr. Caplinger can work full time in a sedentary occupation because he can sporadically engage in some activities.

---

[3] *Clark v. CUNA Mutual Long Term Disability Plan*, 2016 WL 1060344 (W.D. WI March 15, 2016).
[4] *Wagner v. American United Life Ins. Co.*, No. 17-4072 (6th Cir. May 3, 2018).

However, the ability to engage in sporadic activities says little about the ability to go to work. *Diaz v. Prudential Ins. Co. of Am.*, 499 F.3d 640 (7th Cir. 2007).

37. The Policy does not require Mr. Caplinger to be bedridden to qualify for benefits.

38. Boston Mutual's use of Dr. Russell, among others, reveals its underlying motive to terminate Mr. Caplinger's claim, no matter the evidence. On information and belief, Boston Mutual selected these medical record reviewers to review Mr. Caplinger's claim for that very purpose. Those medical record reviewers have routinely discounted or ignored Mr. Caplinger's complaints of jaw pain and fatigue. In doing so, they imply that he is either exaggerating his symptoms or outright lying about them. This pattern of conduct evidences a biased approach to Boston Mutual's LTD claims, including this one.

39. On November 12, 2018, Mr. Caplinger submitted additional evidence in support of his claim. Among other things, he provided evidence relating to Disability RMS's use of biased and unqualified medical record reviewers. He also provided even more EMGs that documented the disabling nature of his CIDP. The additional evidence was provided pursuant to Fifth Circuit case authority that obligated Boston Mutual to review the additional information. ("The administrative record consists of relevant information made available to the administrator prior to the . . . filing of a lawsuit and in a manner that gives the administrator a fair opportunity to consider it".) *Vega v. National Life Ins. Services, Inc.*, 188 F.3d 287, 300 (5th Cir. 1999). *Vega* has been repeatedly upheld by the 5th Circuit, most recently in *Ariana M. v. Humana Health Plan of Texas,*

*Inc.*, 884 F.3d 246 (5th Cir. 2018). He requested that Boston Mutual review those records pursuant to its legal obligation and re-evaluate his claim.

40. The evidence that Mr. Caplinger sent to Boston Mutual on November 12, 2018 was submitted before filing this lawsuit and in a manner that gave Boston Mutual a fair opportunity to consider it. As of the filing of this lawsuit, Boston Mutual has not responded to the additional evidence supporting Mr. Caplinger's claim.

41. Having exhausted his administrative remedies, Dan Caplinger brings this action to recover the LTD benefits promised in the Plan and Policy.

## IV.
## CLAIMS & CAUSES OF ACTION

42. The Employer Flexible HR, LLC Health and Welfare Plan is governed by ERISA. 29 U.S.C. §1001, *et. seq.* Tristar/Employer Flexible HR is the plan sponsor and Plan Administrator. Boston Mutual is the insurer and a named fiduciary under the Plan. Disability RMS is the Claim Fiduciary under the Plan.

43. As Plan fiduciaries, Boston Mutual and the Plan are obligated to handle claims for the benefit of the Plan and Plan beneficiaries, and to deliver the benefits promised in the Plan. They are also obligated as fiduciaries to conduct their investigation of a claim in a fair, objective and evenhanded manner.

44. Boston Mutual's adjustment of the Caplinger claim was instead biased and outcome oriented. This was partly reflected by its denial of the Caplinger claim, even after being presented with evidence of his disability. It was also reflected in Boston Mutual's unreasonable reliance on reviewers who lacked the training, education, and experience to objectively or competently review his claim.

45. Boston Mutual's interpretation of the Plan was not legally correct. It was also contrary to a plain reading of the Plan language.

46. Boston Mutual's interpretation of the Plan and Plan language was contrary to that of the average Plan participant and policyholder. It was contrary to the common and ordinary usage of the Plan terms. Alternatively, the Policy language upon which Boston Mutual based its denial decision was ambiguous. The ambiguous nature of those terms require those terms be construed against Boston Mutual and the Plan and in favor of coverage for Cowan.

47. Boston Mutual's denial was made without substantial supporting evidence. Its decision to terminate the Caplinger claim was instead based upon rank speculation and guesswork. Boston Mutual's denial decision was *de novo* wrong. Alternatively, it was arbitrary and capricious.

48. At all material times, Boston Mutual acted on behalf of the Plan and in its own capacity as the Insurer and, through Disability RMS, as Claims Administrator.

49. Defendants' termination of the Caplinger claim breached the terms of the Plan. This breach was in violation of 29 U.S.C. §1132(a)(1), entitling Caplinger to the LTD policy benefits to which he is entitled, along with pre-judgment interest on the amounts due and unpaid, all for which Mr. Caplinger now sues.

## V.
## STANDARD OF REVIEW

50. The default standard of review for denial of a benefit claim is *de novo.* Where the Plan or Policy confers discretion on the Claims Administrator, an abuse of discretion standard of review may apply.

51. The Plan or Policy may contain a discretionary clause or language Defendants may contend affords them discretion to determine eligibility for benefits, to interpret the Policy, and determine the facts. Defendants' denial under this standard of review, if any, was an abuse of discretion. It was arbitrary and capricious.

52. If discretion applies, the Court should afford Boston Mutual less deference in light of its financial conflict of interest. Boston Mutual's conflict of interest is both structural and actual. Its structural conflict results from its dual role as the adjudicator of Caplinger's claim and as the potential payor of that claim.

53. Boston Mutual's actual financial conflict is revealed in the policies, practices, and procedures influencing and motivating claim delays and denials for financial gain. Boston Mutual's financial conflict is also revealed in the high return gained from the delay in payment or denial of claims.

54. Each of these grounds, on information and belief, was a motive to deny Plaintiff's claim, along with the delay in payment or denial of claims of other Boston Mutual policyholders and claimants.

55. In light of its financial conflict, Boston Mutual should be given little or no discretion in its claims decision.

56. Alternatively, the standard of review of this claim should be *de novo,* affording Defendants no discretion in its interpretation of the terms of the Policy and Plan or in its factual determinations. Both factual conclusions and legal determinations are reviewed *de novo* by the Court. *Ariana v. Humana Health Plan of Texas, Inc.*, 884 F.3d 246 (5th Cir. 2018).

57. The Plan or Policy was delivered in Texas and is subject to the laws of that jurisdiction. Accordingly, Texas law applies under the ERISA savings clause. Texas has banned the use of discretionary clauses in insurance policies issued in this state. TEX. INS. CODE §1701.062; 28 Tex. ADMIN. CODE §3.1202. Accordingly, review of the Caplinger claim and Defendants' claims handling conduct, both in their interpretation of terms of the Policy and the Plan, and in their determination of the facts, should be *de novo.*

## VI.
## REQUEST FOR PREJUDGMENT INTEREST & AN ACCOUNTING

58. Caplinger requests, in addition to the amount of benefits withheld, prejudgment interest on any such award. He is entitled to prejudgment interest as additional compensation, and pursuant to Texas Insurance Code Texas Insurance Code, Sec. 1103.104, or on principles of equity.

59. The Plan and Policy do not contain a rate of interest payable on the benefit amount wrongfully withheld. Resort must be had to Sec. 1103.104(c) of the Texas Insurance Code. Caplinger thus requests an accounting in order to determine the amount earned on the funds that should have rightfully been paid to him, and in accordance with Insurance Code Sec. 1103.104(c).

## VII.
## CLAIM FOR ATTORNEYS FEES & COSTS

60. Caplinger seeks an award of his reasonable attorneys' fees incurred and to be incurred in the prosecution of this claim for benefits. He is entitled to recover those fees, together with his costs of court, pursuant to 29 U.S.C. §1132(g).

## VIII.
## PRAYER

Dan Caplinger, Plaintiff, respectfully prays that upon trial of this matter or other final disposition, this Court find in his favor and against Defendants Boston Mutual Life Insurance Company and Employer Flexible HR, LLC Health and Welfare Plan, and issue judgment against each Defendant as follows:

A. Pay to Mr. Caplinger all benefits due and owing in accordance with the terms of the Plan and Policy, as well as all prejudgment interest due thereon and as allowed by law and equitable principles;

B. Pay all reasonable attorney's fees incurred and to be incurred by Mr. Caplinger in obtaining the relief sought herein, along with the costs associated with the prosecution of this matter; and

C. All such other relief, whether at law or in equity, to which Mr. Caplinger may show himself justly entitled.

Respectfully submitted,

By:_____
Amar Raval, TBA #24046682
S.D. No. 619209
Berg Plummer Johnson & Raval LLP
3700 Buffalo Speedway, Suite 1150
Houston, TX 77098
(713) 526-0200
(832) 615-2665 (Fax)
araval@bergplummer.com

ATTORNEYS FOR PLAINTIFF